Horace Maynard, Special J.,
delivered the opinion of the Court.
In January, 1860, Moses Bowers of Greene County, died, leaving an estate in lands, slaves and other property, valued at something more than thirty thousand dollars, to be enjoyed by his widow, Margaret Bowers; a son, Andrew S. Bowers, and two daughters, the complainant, Mrs. Bell, and the respondent, Mrs. Johnston. *312 By his last Will, he left all the property to his widow during her life, with permission to divide it among the children at any time she might desire to do so. But, when divided, it was to he so done, that, after collecting advancements — an account of which appears to have been kept by the testator in what he calls the family book — the children should all be made equal in their inheritance.
During his lifetime he had given to his son a tract of land containing one hundred and ninety-six acres. The Will devises to each daughter, as an equivalent, the like number of acres, to be laid off for the one at the home end, and for the other at the Guinn end, so-called, of his farm, and provides that if they cannot agree which shall have the home place, three good men are to be selected who shall decide it by lot.
In July, 1861, the legatees met and attempted a partial division of the estate. The negroes were set apart, severally, to the three children; the home place was assigned to complainants, Bell and wife; and the Guinn place to Johnston and wife. In consideration of the buildings on the home place — estimated by the parties to the transaction at twelve hundred dollars, giving to it to that extent a superior value — complainant, Bell, executed two notes for four hundred dollars each, to the brother, Andrew, and the sister, Mrs. Johnston. Deeds of release and confirmation were mutually executed. Johnston and wife also executed to complainants their bond, covenanting that she should ratify the agreement, upon her attaining the age of twenty-one years, of which she yet lacked more than one year, *313 and promised to furnish certain sureties to the bond. On further reflection, both Andrew and Mrs. Johnson became dissatisfied with the arrangement, and, at their instance, by the mutual consent of the parties, it was revoked, and all the papers cancelled. The note executed by complainant to Johnston and wife, it is alleged, and not denied, has never been surrendered to him.
In September following, the widow, Margaret Bowers, and complainant Bell, negotiated again. She was very anxious to have the complainants live with her at the home place, and for this purpose she conveyed to them her life estate therein, and prevailed upon Bell to execute to her two notes for four hundred dollars each — the one for Andrew, who was then living, but who died soon after, and the other for Mrs. Johnston — in consideration that she would ratify the contract when she became of age, and to be paid only on condition that she did so. Complainant, Mrs. Bell, did not participate in the contract, and always repudiated it. Likewise her sister, after becoming of age, repeatedly and emphatically refused to ratify it. Einally, shortly before the filing of this bill, complainant Bell, formally and in writing, notified the respondents of his intention to abandon ' it. * * x
Much ingenuity in argument has been displayed to discover the rights of the several devisees under the Will, and the power of appointment conferred upon the widow. But in the view we take of the testimony, the contract of September, 1861, remains incomplete; not an executory contract, but rather the projet or scheme of a contract which never had the force of an agree *314 ment by the consent of the necessary parties, and consequently it cannot be enforced, either at law or in equity. The conveyance by the widow to complainants of her life interest in the home tract, and the execution by complainant Bell, of the two notes of four hundred dollars each, were but parts of the general scheme, and not intended to stand as separate and independent transactions; and it would be manifest injustice to have them in force while the other parts of the scheme remain unaccomplised. Accordingly they will be severally annulled and cancelled, and the parties left, without prejudice from their negotiations, to their respective rights under the testator’s Will. The two conveyances of respondent, Margaret Bowers, to complainants, Bell and wife, and all the notes outstanding executed by complainant Bell, whether in July or September, 1861, to the widow, or to either of the other legatees, will be declared void, and the parties mutually enjoined from enforcing them or asserting any rights under them.
The proof shows that the main inducement on the part of Mrs. Bowers, to make the agreement, was to have her daughter, Mrs. Bell, and her husband, move to the home place and live with her. This advantage she has enjoyed during the many ■ years spent in ineffectual efforts to compose and reconcile their family differences; and she is not, therefore, entitled to rent from complainants for the use of the home place.
Upon the principle that he who makes improvements upon real estate to which his title is known to be incomplete and doubtful, does so at his own risk, *315 complainant Bell, will be allowed nothing for better-ments. But tbe parties will be left, as nearly as possible, in the predicament they were in prior to their futile attempts at settlement.
The costs will be equally divided; to be paid one-third each, by Bell and wife, by Johnston and wife, and by Mrs. Bowers.